ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
MICHAEL R. WILNER (Cal. Bar No. 156592)
Assistant United States Attorney
Deputy Chief, Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-0687
     Facsimile:  (213) 894-6269
     E-mail:     michael.wilner@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 10-644-JHN |
| Plaintiff, | **GOVERNMENT'S JOINT SENTENCING POSITION REGARDING DEFENDANTS RYAN AND JEFF MANZANARES** |
| v. | |
| RYAN MANZANARES and JEFF MANZANARES, | Sentencing: December 20, 2010, at 11:00 a.m. |
| Defendants. | |

*

*

*

*

*

*

*

*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendants Ryan and Jeff Manzanares await sentencing for their participation in a mortgage fraud scheme. Both brothers have pled guilty to a mail fraud charge [18 U.S.C. § 1341] for their roles in the offense.

The Manzanares brothers ran a company that submitted phony mortgage applications to lenders. The bogus loans were ostensibly to allow homeowners in financial difficulty to restructure their debts and remain in possession of their homes. In reality, though, the scheme caused lenders to lose money and homeowners to lose their residences. The only "winners" from the deals were the Manzanares brothers, who received huge fees and payments for initiating the fraudulent loans.

Both defendants confessed to their misconduct when questioned by federal agents in the course of this fraud investigation. The preindictment plea agreements between the prosecution and the defendants contain advisory guideline calculations that envision custody sentences for these offenders. The Probation Office concurs, recommending prison terms of 27 and 30 months for Ryan and Jeff Manzanares, respectively.

* * *

The government agrees with those recommendations. Sentences within the advisory guidelines are appropriate here. The fraud offenses caused real injury to the defrauded lenders and to the homeowners. The fraud scheme was deliberately conceived and deceptively implemented, using straw buyers and phony documents to obtain major loans from lenders. The verified losses in this

case exceed $500,000. The government believes that a fair, yet reasonable, prison term for each defendant is an appropriate result to this case.[1]

## II. FACTS

The government concurs with the statement of defendants' offense in the presentence reports. For the Court's convenience, the government offers a brief summary of the criminal conduct here.[2]

### A. The Offense Conduct

The Manzanares brothers operated a sub-prime mortgage company in Orange County called Bridges Finance. (PSR at ¶ 9; Interview at 1.) Employees of Bridges Finance marketed the company to homeowners who wanted to refinance mortgages on which they were close to default/foreclosure.

The transactions that Bridges Finance implemented were intended to appear on paper as the sale of the home from the homeowner to a new party, with a new mortgage in the name of that new owner. In reality, though, the new owner was a "straw borrower" who did not intend to purchase or live in the

---

[1] Both brothers admitted to jointly controlling and participating in the fraud scheme. While each defendant is entitled to individual consideration at sentencing (including defendant Jeff Manzanares's increased prior criminal history), the government submits a single sentencing position for the two, similarly-situated offenders here.

[2] In addition to the presentence report for Ryan Manzanares (cited as "PSR at ¶ __"), the government relies upon the interview reports of both defendants in which they admitted their involvement in the scheme. Copies of those reports are attached at Exhibit 1.

house, and would not pay the new mortgage.  (PSR at ¶ 10-12.)
Rather, the original homeowner was to remain in possession of the
property, and was to make the payments on the new mortgage.
(PSR at ¶ 11, Interview at 3-6.)

To facilitate the new mortgages, the Manzanares brothers
caused their company to submit false loan applications to
lenders.  The loan applications falsely claimed that: the
mortgage was for a legitimate home sale; the straw borrower would
be the owner-occupant of the property; the borrower had
sufficient income to afford the new mortgages.  The Manzanares
brothers admitted that they "upped the income" of the putative
borrowers and were responsible for the false statements submitted
to the lenders.  (PSR at ¶ 12, Interview at 6.)

Bridges Finance reaped large fees for initiating and
processing the bogus loans.  Additionally, the loans in the
staged home sales were inflated to allow the withdrawal of equity
from the transaction, which was also paid over as part of the
transactions.  In this way, the Manzanares brothers received
exorbitant payments from the proceeds of the loans and/or from
the homeowners' equity in the property.  (PSR at ¶ 13.)

Ultimately, many of the homeowners could not afford to make
payments on the mortgage loans taken out in the name of the
straw buyers.  The defaults on the properties identified in the
charging documents led to actual losses of over $584,000 to
lenders.  (PSR at ¶ 16.)  Additionally, the scheme caused injury
to homeowners who sought help from the Manzanareses to maintain
their homes.  The government expects to receive letters from some

of those defrauded homeowners and will file them with the Court in advance of sentencing.

### B. The Plea Agreements and Guideline Calculations

The Manzanares brothers each pled guilty to a mail fraud charge based on virtually identical plea agreements. The plea agreements envision an advisory guideline calculation of offense level 7 (fraud offense) plus a 14-level increase for loss exceeding $400,000 for the mortgage transactions that were fully investigated before defendants confessed to their crimes. After adjusting for acceptance of responsibility, the final offense level for both defendants is level 18. The presentence reports agree with this calculation. (PSR at ¶ 24-35.)

As for criminal history, defendant Ryan Manzanares has no prior convictions. His advisory guideline range is 27-33 months. Co-defendant Jeff Manzanares is in criminal history category II based on two previous drunk-driving offenses. The Probation Office determined that his recommended range is therefore 30-37 months. The government agrees with both of the Probation Office's calculations.

### III. THE GOVERNMENT'S ANALYSIS OF THE RELEVANT SENTENCING FACTORS LISTED IN 18 U.S.C. § 3553(a)

Pursuant to the terms of the plea agreements, the government is committed to make low-end sentencing recommendations for both defendants. The government therefore respectfully joins the recommendations of the experienced probation officers of 27- and 30-month sentences for Ryan and Jeff Manzanares. The proposed sentences reasonably reflect the sentencing factors contained in 18 U.S.C. § 3553(a), including an analysis of defendants' offenses, their personal background, their respect for the law, and the role of the advisory guidelines.

Both defendants are college-educated professionals with experience in the mortgage and real estate fields. They were well aware at the time of their offenses that they were repeatedly submitting materially false loan applications to lenders. The Manzanares brothers affirmatively marketed their business to homeowners in distress. They willingly sought the use of straw borrowers to participate in the staged transactions. This conduct was clearly intended to enrich themselves without regard to the consequences to the homeowners or the victim-lenders.

As such, the nature of the offense and the sophistication of the offenders merit a considerable sentence here.[3] Moreover, this type of white-collar crime has been rampant in Southern California in recent years. A significant prison sentence is

---

[3] 18 U.S.C. § 3553(a)(1).

1 necessary to punish these offenders and to deter other potential
2 criminals from participating in similar schemes.[4]
3     In mitigation, the government notes that defendants did not
4 misappropriate the bulk of the funds that they fraudulently
5 obtained through the bogus loans.  Additionally, defendants'
6 prompt confessions and willingness to plead guilty before the
7 conclusion of the government's fraud investigation demonstrates
8 that the Manzanares brothers now have some respect for the law.[5]
9 The remaining 3553(a) factors do not appear to apply here.
10 Significantly, the government believes that a non-custodial or
11 probationary sentence cannot be appropriate given the nature,
12 circumstances, and seriousness of the crimes here.[6]

---

[4] 18 U.S.C. § 3553(a)(2)(a), (b).

[5] 18 U.S.C. § 3553(a)(2)(a).

[6] 18 U.S.C. § 3553(a)(3-7).

**IV. <u>CONCLUSION</u>**

For the foregoing reasons, and based on the parties' plea agreements and the Probation Officers' recommendations, the government respectfully requests that the Court impose low-end custody sentences of 27 months in prison for defendant Ryan Manzanares and 30 months for defendant Jeff Manzanares.

Dated: November 30, 2010         Respectfully submitted,

                                 ANDRÉ BIROTTE JR.
                                 United States Attorney

                                 ROBERT E. DUGDALE
                                 Assistant U.S. Attorney
                                 Chief, Criminal Division

                                     /s/ AUSA Wilner
                                 _____
                                 MICHAEL R. WILNER
                                 Assistant United States Attorney
                                 Deputy Chief, Major Frauds Section

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA

7